FILED

2012 Mar-13  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **KELLY PITTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-10-S-3073-NW** |
| | ) | |
| **TERRY WOODS, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kelly Pitts, commenced this action against defendants, Terry Woods and Ronnie Willis, on November 12, 2010.[1]  Plaintiff brought suit pursuant to 42 U.S.C. § 1983, alleging that defendants violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.[2]  Woods and Willis filed motions to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 16, 2011.[3]  The court entered a briefing schedule, ordering plaintiff to file responses to both motions by April 8, 2011.[4]  Despite the fact

---

[1] Doc. no. 1 (Complaint).  Two other defendants, "Junior" Witt and the Lauderdale County Sheriff's Department, have been dismissed from the action.  *See* doc. no. 16 (Order of Dismissal as to Fewer Than All Defendants); doc. no. 36 (Order Dismissing Fewer Than All Defendants).

[2] Doc. no. 1 ¶ 1.  The complaint also contains what appear to be recitals of the elements of the state law causes of action of assault and battery, but Pitts did not specifically invoke the jurisdiction of the court over such claims.

[3] Doc. nos. 12, 14.

[4] Text Order of March 25, 2011.

that plaintiff has been actively litigating this case, he never filed a response to either motion.

## I.  FACTUAL ALLEGATIONS OF THE COMPLAINT

Ronnie Willis is the Sheriff of Lauderdale County, Alabama.[5]  As such, Willis is "responsible for ensuring [his] deputies are properly trained, supervised and disciplined."[6]  Terry Woods is an employee of the Sheriff's Department who is responsible for "supervising and managing" the county's "Reserve Deputies."[7] Plaintiff, Kelly Pitts, also is an employee of the Sheriff's Department.[8]

Pitts and Woods attended a meeting of the Reserve Deputies on September 13, 2010.[9]  "After a brief disagreement, Plaintiff called Defendant Wood[s] a derogatory name.  In response, Defendant Wood[s] grabbed and restrained Plaintiff, informed Plaintiff that he was 'armed' and threatened to take Plaintiff to jail."[10]  In doing so, Woods "restrained Plaintiff, using a police maneuver well known to law enforcement as a tactic that causes physical injury," and Pitts was injured as a result.[11]  The injuries

---

[5] Doc. no. 1 ¶ 4.

[6] *Id.* ¶ 6 (bracketed alteration supplied).

[7] *Id.* ¶ 5.

[8] *See id.* ¶ 7 ("Plaintiff and Defendant Woods were attending a meeting of the Lauderdale Country Reserve Deputies.").

[9] *Id.* ¶ 7.

[10] Doc. no. 1 ¶ 8 (bracketed alterations supplied).

[11] *Id.* ¶ 14.  *See also id.* ¶ 9.

Pitts suffered required surgery and "ongoing medical care," and have prevented him from returning to work.[12]  Pitts filed administrative complaints with the Sheriff's Department and the county, but no action has been taken to discipline Woods,[13] despite the fact that "Woods [allegedly] has a known history of harassing and violent behavior against other deputies and members of the community at large."[14]

Pitts alleges that, as a result of the actions of defendants, he "suffered a deprivation of his rights, privileges and immunities secured by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States . . . an assault, a battery, ongoing monetary damages, lost wages, pain and suffering," and the costs of litigation.[15]

## II.  MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).[16]  This rule must be read together with Rule 8(a),

---

[12] *Id.* ¶ 9.

[13] *Id.* ¶ 10.

[14] *Id.* ¶ 11 (bracketed alteration supplied).

[15] Doc. no. 1 ¶ 18.

[16] In full text, Rule 12(b) provides that:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

which requires that a pleading contain only a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that

pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp.*

*v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, —,

129 S. Ct. 1937, 1949 (2009) (citations omitted).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

> To survive a motion to dismiss founded upon Federal Rule of

---

> (1) lack of subject-matter jurisdiction;
>
> (2) lack of personal jurisdiction;
>
> (3) improper venue;
>
> (4) insufficient process;
>
> (5) insufficient service of process;
>
> (6) failure to state a claim upon which relief can be granted; and
>
> (7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b).

4

Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id*., at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*., at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*., at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*.  *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id*., at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

5

While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations*, *a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief*.

*Iqbal*, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis added).

When ruling upon a motion to dismiss, the court must assume that the well-pleaded facts set forth in the plaintiff's complaint are true. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (1994) (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true"). Accordingly, that which is set out in the following portions of this memorandum opinion as "the facts" for Rule 12(b)(6) purposes may, or may not, be the actual facts. *See, e.g.*, *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006).

### III.  MOTION TO DISMISS FILED BY WOODS

Woods makes three arguments in favor of his motion to dismiss. *First*, he argues that he was not acting under color of state law at the time of the altercation with plaintiff. *Second*, he argues that, even if he was acting under color of state law, plaintiff has failed to identify any violation of a substantive constitutional right.

6

*Finally*, he argues that, even if he did violate plaintiff's constitutional rights, he

protected by the doctrine of qualified immunity.

## A.    Whether Woods Was Acting Under Color of State Law

Section 1983 provides a means of seeking redress against governmental entities

and officials whose conduct under color of state law deprives a plaintiff of rights,

privileges, or immunities secured by the United States Constitution or federal statutes.

The statute was enacted for the express purpose of enforcing the Fourteenth

Amendment.[17]  In pertinent part, the statute provides that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to the deprivation

---

[17] *See*, *e.g.*, *Mitchum v. Foster*, 407 U.S. 225 (1972), where the Court observed that:

> Section 1983 was originally § 1 of the Civil Rights Act of 1871 . . . .  It was
> "modeled" on § 2 of the Civil Rights Act of 1866, . . . and was enacted for the
> express purpose of "enforc[ing] the provisions of the Fourteenth Amendment."  . .
> . The predecessor of § 1983 was thus an important part of the basic alteration in our
> federal system wrought in the Reconstruction era through federal legislation and
> constitutional amendment.  As a result of the new structure of law that emerged in
> the post-Civil Way era — and especially of the Fourteenth Amendment, which was
> its centerpiece — the role of the Federal Government as a guarantor of basic federal
> rights against state power was clearly established. . . .  Section 1983 opened the
> federal courts to private citizens, offering a uniquely federal remedy against
> incursions under the claimed authority of state law upon rights secured by the
> Constitution and laws of the Nation.

*Id*. at 238-39 (citations and footnotes omitted).  Other cases providing insight into the history of §
1983 include *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 834 (1985); *Monroe v. Pape*, 365 U.S.
167, 171 (1961).

of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

There are two essential elements of a claim asserted pursuant to § 1983:  the conduct complained of was committed by a person acting under color of state law; and this conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See*, *e.g.*, *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *partially overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Burch v. Appalachee Community Mental Health Servs.*, *Inc.*, 840 F.2d 797, 800 (11th Cir. 1988) (*en banc*), *aff'd sub nom. Zinermon v. Burch*, 494 U.S. 113 (1990).

As the Supreme Court explained in *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999),

[t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he or she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.  Like the state-action requirement of the Fourteenth Amendment, *the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.*

8

*Id*. at 49-50, 119 S.Ct. at 985 (emphasis supplied) (internal punctuation marks and citations omitted); *see also, e.g.*, *Focus on the Family v. Pinellas Suncoast Transit*, 344 F.3d 1263, 1276-77 (11th Cir. 2003) (same); *Almand v. DeKalb County, Georgia*, 103 F.3d 1510, 1513 (11th Cir. 1997) (holding that, in order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law).

> A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state. *Id*. "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Edwards v. Wallace Community College*, 49 F.3d 1517, 1523 (11th Cir.1995). It is firmly established that a defendant in a § 1983 suit acts under color of law when he abuses the position given to him by the State. *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

*Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (holding that a city manager was acting under color of state law for purposes of § 1983 when he raped a city employee in her apartment). It is well settled that "[n]ot all actions by state employees are acts under color of law." *Edwards*, 49 F.3d at 1523 (collecting cases) (bracketed alteration supplied).

It is undisputed that Woods is an employee of the county and, thus, that when performing his official duties, he is generally a state actor subject to liability under §

1983.[18]  However, Woods argues that, while engaging in the altercation with plaintiff, he was not acting under color of state law.  Woods *was* engaged in the duties of his employment, *i.e.*, attending a deputies' meeting, when he injured plaintiff.[19]  Even so, says Woods, that fact is not, alone, sufficient to establish that he was a acting under color of state law.  When faced with similar facts, the former Fifth Circuit held that a police chief was not acting under color of state law.  *Delcambre v. Delcambre*, 635 F.2d 407 (5th Cir. 1981) (*per curiam*).[20]  In *Delcambre*, the plaintiff sued the town police chief, her brother-in-law, following an altercation "on the premises of the municipal police station."  *Id.* at 408.  The district court "found that at the time of the incident Chief Delcambre was on duty, . . . that the altercation arose out of an argument over family and political matters and that Amy Delcambre was neither arrested nor threatened with arrest."  *Id.*  Based upon that finding, the district court dismissed the action, and the Fifth Circuit affirmed that ruling, stating that it was "clear that [the chief] was not acting under color of law."  *Id.* (bracketed alteration supplied).

---

[18] *See* doc. no. 15 (Brief in Support of Woods's Motion to Dismiss), at 5 (citing *West v. Atkins*, 487 U.S. 42, 49 (1988)).

[19] *See generally* doc. no. 1.

[20] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

At first glance, the case at bar resembles *Delcambre*. Here, in the midst of a meeting of county reserve deputies, Woods grabbed, restrained, and injured plaintiff after plaintiff called him "a derogatory name" following "a brief disagreement."[21] The complaint provides no detail as to the nature of the disagreement that sparked the altercation, and it contains no allegations that Woods used or pretended to use his authority as a police officer to instigate the physical altercation. That is, plaintiff has arguably not alleged facts that show that Woods "was acting pursuant to the power he . . . possessed by state authority." *Edwards*, 49 F.3d at 1523.[22] The fact that the attack occurred as a direct result of plaintiff calling him a derogatory name arguably demonstrates that Woods was "acting only as a private individual." *Id.* As in *Delcambre*, a personal dispute was the catalyst of the violence.

The present case differs from *Delcambre* in one important respect, however. Here, Woods threatened to take plaintiff to jail, while in *Delcambre*, there was no threat of arrest. *Delcambre*, 635 F.2d at 408. A threat of an arrest made by a sheriff's deputy would ordinarily constitute an action taken under color of state law, as his power to arrest is "authority possessed by virtue of his employment with the state."

---

[21] Doc. no. 1 ¶¶ 7-8.

[22] Plaintiff does make the conclusory allegation that "at all times material to this action," Woods acted "under the color of authority of the laws of the State of Alabama." *Id.* ¶ 5. However, whether an individual was acting under color of state law is a question of law to be determined by the court; a plaintiff cannot establish action under color of state law by merely reciting that legal conclusion in his complaint. *See Almand*, 103 F.3d at 1513-14.

11

*Almand*, 103 F.3d at 1513 (citing *Edwards*, 49 F.3d at 1522).   Nevertheless, the context of the facts alleged in the complaint is different from the normal arrest scenario.   Woods attacked plaintiff, his colleague, in the presence of other deputies. Under those circumstances, threatening to arrest plaintiff likely would not carry the same coercive and intimidating effect that the same threat would if leveled against an ordinary citizen outside the confines of a meeting of deputies.   Even so, the threat of an arrest is still a powerful symbol of state authority.   Although plaintiff himself is a deputy, and was at a meeting of other deputies, Woods had a supervisory role among those deputies.[23]   Thus, taking the allegations in the complaint as true, the court must conclude at this stage of the proceedings, before there has been any meaningful discovery, that Woods *was* acting under color of state law.

**B.     Whether Woods Violated Plaintiff's Constitutional Rights**

Section 1983 is not jurisdictional, and it is not "itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."   *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations and internal quotation marks omitted).   Thus, in order to survive a motion to dismiss, plaintiff must allege violations of constitutional provisions.   In his complaint, plaintiff alleged that Woods violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments.

---

[23] Doc. no. 1 ¶ 5.

12

The complaint contained paragraphs individually (although not entirely lucidly) outlining plaintiff's claims under the First and Fourth Amendments, but simply recited the Fifth and Fourteenth Amendments when listing the damages he suffered.

### 1.    First Amendment

Plaintiff alleges that "Woods illegally deprived, restricted and retaliated against Plaintiff for engaging in speech protected by the First Amendment" by attacking him and threatening to arrest him.[24]  He alleges that those "actions were intended to censor, chill or deter Plaintiff from exercising his right to free speech and were in retaliation for the exercise of such speech."[25]  It is unclear whether the "speech" at issue is something said during the "brief disagreement" between plaintiff and Woods, or the "derogatory name" spoken after that disagreement.[26]

A plaintiff alleging that he suffered retaliation for exercising his First Amendment rights must establish three elements:  "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech."  *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (citations omitted).  Although the First Amendment states

---

[24] *Id.* ¶ 13.

[25] *Id.*

[26] *See id.* ¶ 8.

13

that "Congress shall make no law . . . abridging the freedom of speech," U.S. Const. amend. I (1797), not all speech is protected under the Constitution. *See, e.g.*, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) (listing types of unprotected speech).

Woods argues that the allegations in plaintiff's complaint "fail[] to identify any speech at all, merely stating that 'a brief discussion' occurred."[27] A more accurate characterization is that the complaint fails to squarely allege that plaintiff engaged in any *protected* speech. In his complaint, plaintiff offers no specifics about the speech at issue. To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim for relief that is "plausible on its face." *Twombly*, 544 U.S. at 556, 570. In the context of a First Amendment retaliation claim, that requirement means that a plaintiff must plead facts that plausibly suggest that plaintiff's unidentified "speech" was *protected* under the First Amendment. *See, e.g.*, *Fahs Construction Group, Inc. v. Gray*, No. 3:10-CV-0129 (GTS/DEP), 2011 WL 294269, at *6 (S.D.N.Y. Jan. 27, 2011) ("To state a claim for retaliation, a plaintiff must plead facts plausibly suggesting that . . . the speech or conduct at issue was protected . . . .") (internal quotations and citations omitted). The allegations in plaintiff's complaint, lacking *any* specifics regarding the words actually spoken, fail to meet that burden. Therefore,

---

[27] Doc. no. 15, at 10.

plaintiff has failed to sufficiently plead the elements of a First Amendment violation, and with regard to his First Amendment claim, Woods's motion to dismiss is due to be granted.

### 2.    Fourth Amendment

Plaintiff also alleges that Woods violated his rights under the Fourth Amendment.   That amendment preserves "[t]he right of the people . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV (bracketed alteration supplied).   "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)).[28]   Any analysis of a Fourth Amendment excessive force claim must focus on whether the force used was objectively reasonable.   "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted, bracketed alteration supplied).   In other words, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively

---

[28] Here, the complaint does not contain an allegation that plaintiff was actually arrested. However, it would be incongruous to hold that an officer can escape liability for using excessive force simply by not carrying out the arrest threat accompanying that force.

reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*. (citations omitted).

The court may consider a number of factors when determining whether the force applied was "reasonable" under the circumstances, including: (1) the "severity, or lack of severity, of the alleged crime in issue," *id*. at 396; (2) "whether the person against whom the force was used posed an immediate threat to the safety of the police or others," *id*.; (3) "the need for the application of force," *Jackson v. Sauls*, 206 F.3d 1156, 1170 n.18 (11th Cir. 2000); (4) "the relationship between the need and the amount of force used," *id*.; (5) "the extent of the injury inflicted," *id*.; (6) "whether the force was applied in good faith or maliciously and sadistically," *id*.; (7) "the possibility that the persons subject to the police action are themselves violent or dangerous," *id*.; (8) "the possibility that the suspect may be armed," *id*.; (9) "the number of persons with whom the police officers must contend at one time," *id*.; and (10) "whether the suspect was resisting or fleeing." *Id*.

The reasonableness of the force applied also is measured as of the precise moment it is used; events that occurred before that moment, though perhaps giving factual context to the use of force, are not probative of the reasonableness of the decision to use force. *See Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991). Additionally, "[u]se of force must be judged on a case-by-case basis 'from the

16

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Plaintiff alleges that in attacking him, Woods used force that was "unreasonable and excessive."[29]  Specifically, "Woods used a police maneuver well known to law enforcement as a tactic that causes physical injury [and] threatened Plaintiff with deadly force . . . ."[30]  Although the complaint provides no detail regarding what that "police maneuver" is, or the specific nature of the injuries plaintiff sustained as a result, the allegations are sufficient to survive a motion for summary judgment. According to the complaint, Woods attacked plaintiff in response to plaintiff calling him a "derogatory name."[31]  Any amount of force capable of causing physical injury is an excessive response to a verbal insult, especially in the context of a meeting among coworkers. *See Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002).

---

[29] Doc. no. 1 ¶ 14.

[30] *Id.* (bracketed alteration supplied).

[31] *Id.* ¶ 8.

In *Vinyard*, the Eleventh Circuit ruled that an officer used excessive force when he deployed pepper spray against a person arrested for disorderly conduct and obstruction, crimes of "minor severity." *Id.* at 1347. The incident occurred while the suspect was being transported in the back of a police cruiser, handcuffed. *Id.* at 1343 The officer stopped the car and sprayed the suspect after she returned his verbal insults. *Id.* Although not on all fours with this action, *Vinyard* is instructive. Here, plaintiff was not already arrested and restrained when he insulted Woods, causing Woods to attack him. In contrast, he was *never* arrested; the insult was the only reason Woods took action. Whatever the effect of the insults he directed at Woods, it was not sufficient to warrant an arrest. Instead, Woods simply attacked him. Plaintiff's description of his injuries is vague, but he does state that they were severe enough to require surgery and keep him from working. Those injuries are unquestionably more severe than those that can result from the application of pepper spray.

None of the *Graham* and *Jackon* factors for evaluating the reasonableness of an officer's action suggests Woods acted reasonably. There is no indication that he was faced with making a "split-second judgment" in dangerous circumstances. Rather, he allegedly physically attacked and threatened a coworker following a verbal insult. Moreover, Woods does not even mention the Fourth Amendment claim in his brief in support of his motion to dismiss. With regard to plaintiff's Fourth Amendment claim,

18

Woods's motion to dismiss is due to be denied.

### 3.    Fifth Amendment

Plaintiff also alleges that Woods violated his rights under the Fifth Amendment.[32]  Presumably, his allegation is that Woods violated the "due process" clause of that amendment.  *See* U.S. Const. amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law . . . .").  However, the Fifth Amendment due process clause is applicable to the *federal* government only. *Knoetze v. United States Department of State*, 634 F.2d 207, 211 (5th Cir. Unit B Jan. 12, 1981).  As a county deputy, Woods is not an employee of the federal government and, thus, the Fifth Amendment due process clause is inapplicable to his actions.  With regard to any Fifth Amendment claim, Woods's motion to dismiss is due to be granted.

### 4.    Fourteenth Amendment

Allegations of due process violations committed by state officers are analyzed under the Fourteenth Amendment.  Woods argues that the Fourteenth Amendment due process clause is not implicated in the complaint because it applies only to pretrial detainees.  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).  However, even assuming the Fourteenth Amendment due process clause does apply to plaintiff, he has failed to allege a Fourteenth Amendment violation with any specificity.  Thus,

---

[32] *Id.* ¶ 18.

with regard to any Fourteenth Amendment claim, Woods's motion to dismiss is due to be granted.

## C.    Qualified Immunity

Because Woods has sufficiently alleged violations of the First and Fourth Amendments, the court must address Woods's third argument: *i.e.*, that he is entitled to qualified immunity.   "While qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss; the motion will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'"  *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) (quoting *Williams v. Alabama State University*, 102 F.3d 1179, 1182 (11th Cir.1997)).

While the Eleventh Circuit has long held claims asserted under § 1983 against individual officers to a higher-than-usual standard, in light of the plausibility requirement as articulated in *Iqbal*, utilization of this standard is no longer warranted.

> [Even though] the *Iqbal* opinion concerns Rule 8(a)(2) pleading standards in general, the Court specifically describes Rule 8(a)(2) pleading standards for actions regarding an unconstitutional deprivation of rights.  The defendant federal officials raised the defense of qualified immunity and moved to dismiss the suit under a 12(b)(6) motion.  The Supreme Court held, citing *Twombly*, that the legal conclusions in a complaint must be supported by factual allegations, and that only a complaint which states a plausible claim for relief shall survive a motion to dismiss.  The Court did not apply a heightened pleading standard.

>       While *Swann* [*v. Southern Health Partners, Inc.*, 388 F.3d 834
>       (11th Cir. 2004)] , *GJR* [*v. Investments, Inc. v. County of Escambia, Fla.*,
>       132 F.3d 1359 (11th Cir. 1998)], and *Danley* [*v. Allen*, 540 F.3d 1298
>       (11th Cir. 2008)] reaffirm application of a heightened pleading standard
>       for § 1983 cases involving defendants able to assert qualified immunity,
>       we agree . . . that *those cases were effectively overturned* by the *Iqbal*
>       court.  Pleadings for § 1983 cases involving defendants who are able to
>       assert qualified immunity as a defense shall now be held to comply with
>       the standards described in *Iqbal*.  A district court considering a motion
>       to dismiss shall begin by identifying conclusory allegations that are not
>       entitled to an assumption of truth — legal conclusions must be supported
>       by factual allegations.    The district court should assume, on a
>       case-by-case basis, that well pleaded factual allegations are true, and then
>       determine whether they plausibly give rise to an entitlement to relief.

*Randall v. Scott,* 610 F.3d 701, 709-10 (11th Cir. 2010) (emphasis and bracketed alterations supplied).

The evaluation of a claim of qualified immunity has three parts.  The public official "must first prove [*i*] that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"  *Lee*, 284 F.3d at 1194 (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)).  If the official does make that showing, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate by demonstrating (*ii*) the deprivation of a constitutional right (*iii*) that was clearly established at the time of the defendant's action.  *Wilson v. Layne*, 526 U.S. 603, 609 (1999).[33]

---

[33] Prior to 2009, courts were required to address the question of whether a violation occurred *before* considering the question of whether the violated right was clearly established.  *See, Saucier*

The Eleventh Circuit explained the discretionary function requirement in *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004), where the court said that the

> inquiry is two-fold.  We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n. 17 (11th Cir.1994) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties *and* within the scope of this authority." (emphasis added)).
>
> One might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority or power.  As we explained in *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir.1998) (quotation marks and citation omitted), however, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology."  In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.

*Id.* at 1265-66.  "Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that,

---

*v. Katz*, 533 U.S. 194, 201 (2001).  However, the Supreme Court has recently stated that the *Saucier* procedure, while "often appropriate, . . . should no longer be regarded as mandatory."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, the court need not address the issue of whether there was a violation of clearly established law at all, because Woods has failed to meet his burden of showing that he was acting within his discretionary authority.

*but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." *Id.* at 1266 (bracketed alteration supplied).

The question of whether a defendant acted within his discretionary authority significantly overlaps with the inquiry as to whether he acted under color of state law. However, the fact that a defendant acted under color of state law does not automatically satisfy the discretionary authority requirement for the purpose of qualified immunity. *See Burrell v. Board of Trustee of Georgia Military College*, 970 F.2d 785, 790 n.13 (11th Cir. 1992) ("*Harlow* restricts qualified immunity to 'government officials,' while the constitution requires 'state action.'  Since § 1983 requires action 'under color of state law,' only government officials acting under color of state law may assert qualified immunity.  Accordingly, there remains the theoretical possibility that a government official acting under color of state law might not satisfy the state action requirement.").  The defendant has the burden to establish that he acted within his discretionary authority.  Were that question treated as equivalent to the "color of state law" question, there would be nothing for a defendant to prove and the requirement that he establish that he was acting withing his discretionary authority would be hollow, for the question of qualified immunity only arises when the defendant acted under color of state law.

Woods argues that the fact that he acted within the scope of his discretionary

authority "does not appear to be in dispute."[34]  In support of this proposition, he cites two paragraphs of the complaint that are entirely irrelevant to the issue of discretionary authority.[35]  Woods devotes no further argument to establishing that he was acting within his discretionary authority:  that is, he makes no attempt to establish either of the two elements of a discretionary function.  Thus, he has not met his burden, and his qualified immunity defense must fail.  Woods's motion to dismiss is due to be denied with regard to plaintiff's claim under the Fourth Amendment.

## IV.  MOTION TO DISMISS FILED BY SHERIFF WILLIS

Plaintiff's claim against Sheriff Willis is premised on Willis's alleged failure "to train, supervise and/or discipline deputies, including . . . Woods, so as to prevent unlawful deprivations of" his constitutional rights.[36]

### A.    Supervisory Liability Under § 1983

Neither state nor local governmental supervisors can be held liable under § 1983 on the basis of *respondeat superior*, the doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency.  *See Monell v. Department of Social Services*, 436 U.S. 658,

---

[34] Doc. no. 15, at 12.

[35] *Id.* (citing doc. no. 1 ¶¶ 2-3).  Paragraph 2 of the complaint addresses the issue of venue, and paragraph 3 identifies plaintiff as an individual residing in Lauderdale County.

[36] Doc. no. 1 ¶ 20.

694 n.58 (1978); *see also Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir.

2001) (*en banc*) (holding that an Alabama Sheriff cannot be held liable under § 1983

on the basis of *respondeat superior*) (citing *Geter v. Wille*, 846 F.2d 1352, 1354 (11th

Cir.1988)).

Liability may be imposed upon governmental supervisors, however, when the

supervisor:  (1) personally participated in the alleged constitutional violation; (2)

directed subordinates to act unconstitutionally; (3) was responsible for a custom or

practice that amounted to deliberate indifference; (4) knew that subordinates would

act unconstitutionally, but failed to stop them from doing so; or (5) was on record of

a need to correct widespread abuse, but failed to do so.  *See Cottone v. Jenne*, 326 F.3d

1352, 1360 (11th Cir. 2003) (citing *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir.

2003)).[37]

The standard a plaintiff must meet in order to impose liability upon a supervisor

is "extremely rigorous." *Cottone*, 326 F.3d at 1360-61 (quoting *Gonzalez*, 325 F.3d

at 1234).  More than mere negligence must be shown. *Cf. Daniels v. Williams*, 474

---

[37] The Supreme Court's ruling in *Iqbal* casts doubt on the validity of any incarnation of
supervisory liability under § 1983. *See Iqbal*, 556 U.S. at —, 129 S. Ct. at 1949 ("In a § 1983 suit
. . . — where masters do not answer for the torts of their servants — the term 'supervisory liability'
is a misnomer".).  However, the Eleventh Circuit has not abandoned the standard in place before
*Iqbal*. *See Gross v. White*, 340 F. App'x 527, 531 (11th Cir. 2009).  Because the court finds that
Willis is not subject to liability even under the pre-*Iqbal* standard, whether that standard still applies
is irrelevant.

U.S. 327, 330, 333 (1986) (holding that negligent conduct by a state official is insufficient to state a due process claim under § 1983); *Rivas v. Freeman*, 940 F.2d 1491, 1496 (11th Cir. 1991) (citing *Taylor v. Ledbetter*, 818 F.2d 791, 793-94 (11th Cir. 1987)).   Instead, there must be "an affirmative causal link between the [supervisory] official's acts or omissions and the alleged constitutional deprivation" committed by the subordinate. *Williams v. Limestone County*, 198 F. App'x 893, 896 (11th Cir. 2006) (citing *Zalter v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)) (bracketed alteration supplied).  In fact, the Eleventh Circuit, borrowing from Supreme Court precedent, has said that the pertinent inquiry is whether the supervisory official was "deliberately indifferent" when supervising subordinates, and if so, whether that deliberate indifference actually caused the deprivation of the plaintiff's federally-protected rights.  *See Greason v. Kemp*, 891 F.2d 829, 840 (11th Cir. 1990).

> It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of respondeat superior or vicarious liability." *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted).  "Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  *The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than*

26

> > *isolated occurrences.*" *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.
> > 1990) (citations omitted).  In addition, the causal connection may be
> > established and supervisory liability imposed where the supervisor's
> > improper "custom or policy . . . result[s] in deliberate indifference to
> > constitutional rights." *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.
> > 1991) (citing *Zatler v. Wainwright*, 802 F.2d 397 (11th Cir. 1986)).

*Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (emphasis supplied).

Accordingly, when a plaintiff does not allege that a Sheriff (or other supervisory governmental-official defendant) personally participated in a contested action — or was aware of the circumstances of the action and ratified or condoned it — it follows that "[t]he Sheriff's potential liability [for the acts of other persons working under his direction and control], therefore, can only be policymaker liability." *Marsh*, 268 F.3d at 1035.

> > In considering the Sheriff's potential personal liability as a
> > policymaker, we have looked at decisions involving the liability of local
> > governments as policymakers.  The local government precedents are not
> > directly on point.   The reason is that the standard for imposing
> > policymaker liability on a local government is more favorable to
> > plaintiffs than is the standard for imposing policymaker liability on a
> > Sheriff or other jail official in his personal capacity in a case like this
> > one.  *Farmer*, 114 S. Ct. at 1981.  Still, the local government cases can
> > guide us by analogy; if a local government would not be liable as a
> > policymaker *a fortiori* there is no personal liability.

*Marsh*, 268 F.3d at 1036 n.17.

**B.    Allegations Against Willis**

Of the five bases for supervisory liability under *Cottone*, three are clearly not

27

applicable in this case.  Plaintiff has not alleged that Willis:  personally participated in the attack; directed Woods to attack him; or knew that Woods would attack him, but failed to stop him from doing so.  *See Cottone*, 326 F.3d at 1360.  Nor does the complaint contain allegations sufficient to satisfy the "widespread abuse" method of holding a supervisor liable.  The complaint does include the assertion that "Woods has a known history of harassing and violent behavior against other deputies."[38]  That conclusory statement is a "naked assertion" devoid of "further factual enhancement." *Twombly*, 544 U.S. at 557.  It is not sufficient to establish that Willis had notice of widespread abuse that he failed to correct.  Plaintiff has failed to allege that Willis was aware of behavior by Woods that was "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley*, 193 F.3d at 1269 (quoting *Brown*, 906 F.2d at 671).  On the contrary, he has not alleged any specifics — either of Woods's behavior or Willis's knowledge of it — other than the incident giving rise to his claims.  Thus, the allegations in the complaint are not sufficient to establish supervisory liability on the basis of knowledge of widespread abuse.

The only potential liability is that of a policymaker.  *See Marsh*, 268 F.3d at 1035.  Plaintiff once again makes a conclusory accusation in his complaint, however, alleging that "Willis . . . *negligently* failed to train, supervise and/or discipline deputies

---

[38] Doc. no. 1 ¶ 11.

. . . including Woods, so as to prevent" them from violating his constitutional rights.[39]
Mere negligence is not sufficient to establish supervisory liability under § 1983.
*Rivas*, 940 F.2d at 1496.

In addition to stating that Willis was negligent, plaintiff alleges that "[t]he deficiency in training, supervision and/or disciplining represents a *deliberate indifference* on the part of . . . Willis."[40]  Unlike negligence, deliberate indifference can suffice to establish a supervisory violation of § 1983.  *See Greason*, 891 F.2d at 840. In meeting the deliberate indifference standard, however, a plaintiff is faced with an "extremely rigorous" burden.  *Cottone*, 326 F.3d at 1360-61.  The plaintiff must allege that the supervisory defendant had subjective knowledge of a risk and disregarded it. *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality — a 'policy' as defined by our prior cases — can a city be liable for such a failure under § 1983.") (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).  Other than the conclusory statement regarding Woods's "known history of harassing and violent behavior," the complaint does not contain any specific allegations of knowledge on the part of *Willis.*[41]  Even assuming that knowledge of Woods's past

---

[39] *Id.* ¶ 20 (emphasis supplied).

[40] *Id.* ¶ 22 (emphasis and bracketed alteration supplied).

[41] *Id.* ¶ 11.

29

behavior would satisfy the requirement that Willis was aware of a risk, there is no allegation as to what made the policy deficient:  *i.e.*, there is no statement describing the training, supervision, and disciplinary practices Willis instituted, or their inadequacies.  Plaintiff essentially relies on the fact that Woods attacked plaintiff to demonstrate that Willis must have been deliberately indifferent in training Woods. That amounts to nothing more than either a *res ipsa loquitur* or *ipse dixit* argument for *respondeat superior* liability, not deliberate indifference.   Thus, plaintiff's claim against Willis is due to be dismissed.

## V.  CONCLUSION AND ORDERS

For the reasons stated herein, the motion to dismiss filed by Ronnie Willis is GRANTED.  All claims asserted against Sheriff Ronnie Willis are DISMISSED WITH PREJUDICE.  The motion to dismiss filed by Terry Woods is GRANTED IN PART and DENIED IN PART.   The claims asserted pursuant to the First, Fifth, and Fourteenth Amendments are DISMISSED WITH PREJUDICE.  The claim asserted pursuant to the Fourth Amendments remains pending.

DONE and ORDERED this 13th day of March, 2012.

_____
United States District Judge

30